### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **HENRIETTA WOODS, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:17-cv-00883-RDP** |
| | } | |
| **UNITED STATES STEEL** | } | |
| **CORPORATION, et al.,** | } | |
| | } | |
| **Defendants.** | | |

### <u>MEMORANDUM OPINION</u>

This case is before the court on four separate motions: (1) the Rule 12(b)(6) motion to

dismiss filed by Defendant City of Birmingham ("Birmingham") (Doc. # 67); (2) the Rule

12(b)(6) motion to dismiss filed by Defendant United States Steel Corporation ("U.S. Steel")

(Doc. # 64); (3) U.S. Steel's motion for summary judgment as to certain plaintiffs (Doc. # 62);

and (4) U.S. Steel's motion to strike (Doc. # 79). The motions are fully briefed.[1] (Docs. # 61, 63,

64, 65, 67, 70, 71, 73, 74, 75, 76, 77, 78, 79, 81, 82, 83).

After careful review, and for the reasons explained below, the court concludes that

Birmingham's motion to dismiss is due to be granted and that U.S. Steel's motion to dismiss is

due to be granted in part. The court further concludes that U.S. Steel is entitled to summary

judgment as to eight plaintiffs on all claims asserted by those plaintiffs. Accordingly,

---

[1] Plaintiffs filed two evidentiary submissions (Docs. # 69, 72) in response to Defendants' motions to
dismiss. Because the evidentiary materials constitute "matters outside the pleadings," the court hereby excludes the
evidentiary filings (Docs. # 69, 72) and does not consider them in ruling on Defendants' motions to dismiss. Fed. R.
Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not
excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The Eleventh
Circuit recognizes a narrow exception to this rule, but the exception is inapplicable here. *See SFM Holdings, Ltd. v.
Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (permitting district courts to consider an extrinsic
document when deciding a motion to dismiss only if "(1) [it is] central to the plaintiff's claim, and (2) its
authenticity is not challenged").

Birmingham is entitled to be dismissed from this case with prejudice, U.S. Steel is entitled to judgment against eight of the plaintiffs, and the remaining plaintiffs may proceed with their surviving claims against U.S. Steel. Finally, U.S. Steel's motion to strike is due to be denied as moot.

## I.    Background[2]

Plaintiffs are eighteen residents of the Ensley Sherman Heights Neighborhood who support Ensley Revitalization Committee, LLC, which is also a plaintiff in this lawsuit. (Doc. # 57 at ¶ 1). Defendant U.S. Steel owns an approximately 600-acre site formerly used for steel manufacturing in the Ensley neighborhood, known colloquially as "Ensley Works." (*Id.* at ¶¶ 3, 14). U.S. Steel ceased steel production at Ensley Works in the 1980s, and the property has since fallen into severe disrepair. (*Id.* at ¶¶ 3, 6-7, 17, 41-42).

Plaintiffs claim the Ensley Works property contains obnoxious weeds and overgrown vegetation, dilapidated and unsafe buildings, and a variety of animals and pests, including snakes, rodents, bobcats, and other wild animals. (*Id.* at ¶¶ 3, 6, 43). Those Plaintiffs whose properties abut Ensley Works complain that weeds, vegetation, and overgrown trees from Ensley Works have encroached upon their property, and all Plaintiffs allege that animal pests have migrated from Ensley Works onto their property. (*Id.* at ¶¶ 43-44, 75). Plaintiffs also maintain that the Ensley Works property has become an eyesore, a dumping ground for trash, refuse, animal carcasses, and dead bodies, and a hangout for "obnoxious vagrants" and "vagabonds" who loiter on the property day and night and disturb Plaintiffs' quiet enjoyment of their own

---

[2] "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for purposes of resolving the motions to dismiss under Rule 12(b)(6), the court treats the facts alleged in the Amended Complaint (Doc. # 57) as true. The court also treats the allegations of the Amended Complaint as true for purposes of resolving U.S. Steel's motion for summary judgment, since U.S. Steel does not contest their truth for summary judgment purposes. (Doc. # 63 at 7) ("Taking as true the underlying allegations, [U.S. Steel is still entitled to summary judgment].").

property. (*Id.* at ¶¶ 7, 20). The Ensley Works property largely lacks any barricades or fencing to prevent unauthorized entry onto it. (*Id.* at ¶ 20).

Despite complaints to U.S. Steel and Birmingham since at least 1986, Plaintiffs allege that U.S. Steel has failed to do anything to maintain the property. (*Id.* at ¶¶ 3, 8, 71). Birmingham spent some $34,000 in taxpayer funds to control weeds, rodents, and other pests at Ensley Works on two occasions, but the city has neither sought recovery for those costs nor placed a lien on the property, according to Plaintiffs. (*Id.* at ¶ 44).

In addition to U.S. Steel, Plaintiffs have also named the City of Birmingham as a defendant in this lawsuit. Plaintiffs claim Birmingham has failed to enforce various state statutes authorizing municipalities to abate public nuisances against U.S. Steel, even though Birmingham has local authority and jurisdiction to enforce those statutes.[3] (*Id.* at ¶¶ 3-4). Plaintiffs attribute Birmingham's lack of enforcement efforts to the fact Birmingham and U.S. Steel "are doing business with each other in more affluent areas of Birmingham and surrounding communities." (*Id.* at ¶ 5). By failing to take enforcement action against U.S. Steel to remedy the condition of Ensley Works, Plaintiffs claim Birmingham is perpetuating a private nuisance. (*Id.*). Plaintiffs assert that Birmingham has a duty to declare the Ensley Works property a nuisance, place notices of condemnation upon the four dilapidated structures remaining on the property, and either compel U.S. Steel to remediate the property or undertake remediation itself. (*Id.* at ¶ 8).

---

[3] For example, one such statute provides:

> An abundance of overgrown grass or weeds within a municipality that is injurious to the general public health, safety, and general welfare by providing breeding grounds and shelter for rats, mice, snakes, mosquitoes, and other vermin, insects, and pests . . . or hiding debris, such as broken glass or metal, that could inflict injury on a person going upon the property; or being unsightly; or a growth of grass or weeds, other than ornamental plant growth, that exceeds 12 inches in height, may be declared to be a public nuisance by the municipal governing body and abated as provided in this article.

Ala. Code § 11-67-60.

As a result of U.S. Steel's and Birmingham's alleged wrongdoing, Plaintiffs claim they have suffered diminished property values, damage to their quality of life and to their health and safety, and the inability to quietly enjoy their property. (*Id.* at ¶ 48). Plaintiffs also allege they have incurred expenses related to the abatement of the nuisance conditions on Ensley Works and that the conditions on the property have worked hurt, inconvenience, and damage to them. (*Id.*). For example, Plaintiffs claim they have spent their own money to abate encroaching weeds, cut overgrown trees, and exterminate large rodents that have entered their property from the adjacent Ensley Works property. (*Id.* at ¶ 75).

Plaintiffs assert claims for private nuisance, attractive nuisance, nuisance per se, negligence, negligence per se, trespass, and wantonness -- all under Alabama law -- against both U.S. Steel and Birmingham.[4] (*Id.* at ¶ 47). Plaintiffs seek an injunction either (1) requiring U.S. Steel to (a) abate weeds and vegetation within a 30-yard buffer zone surrounding the Ensley Works property; (b) spray for snakes around the perimeter of the property; and (c) demolish the four dilapidated structures on the property and haul off the resulting debris or (2) ordering Birmingham to enforce applicable state statutes against U.S. Steel and compel the company to remediate the property. (*Id.* at 4-5). They also seek compensatory and punitive damages against U.S. Steel and Birmingham. (*Id.* at ¶ 78).

---

[4] Plaintiffs also assert claims of "Continuing Private Nuisance." *See* (Doc. # 57 at 18) (Count Five). But the "continuing nuisance" concept relates to the measure of damages when a nuisance is permitted to continue instead of being abated; it is not a separate cause of action distinct from an ordinary nuisance claim. *See Swedenberg v. Phillips*, 562 So. 2d 170, 172 (Ala. 1990) ("In a continuing nuisance case involving injury to real property caused by noxious odors, the measure of damages for injury to the real property is the difference in the value of the real property with and without such odors."). Thus, although the court does not address Plaintiffs' "continuing nuisance" claims separately from their private nuisance claims, its analysis of the private nuisance claims applies to the "continuing nuisance" claims as well.

## II.     Standards of Review

Because the motions to dismiss (Docs. # 64, 67) and motion for summary judgment as to certain plaintiffs (Doc. # 62) are governed by different legal standards, the court sets out the relevant standards of review separately.

### A.  Rule 12(b)(6) Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, and neither do pleadings that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the nonmoving party. *Watts v. Fla. International Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific, and to survive the motion, the allegations must permit the court, based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded

facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Twombly*, 550 U.S. at 570.

**B. Rule 56 Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and -- by pointing to affidavits, depositions, answers to interrogatories, or admissions on file -- designate specific facts showing that there is a genuine dispute for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## III.    Analysis

Few people would want to live near Ensley Works if conditions on the property are anything like those described in the Amended Complaint. With allegations of overgrown weeds and vegetation, a host of vermin, deteriorating buildings, and accumulating garbage and refuse (not to mention human and animal remains), the Amended Complaint describes a property any neighborhood would quite reasonably want cleaned up and better maintained. But notwithstanding their allegations, many of Plaintiffs' claims in this lawsuit lack legal merit. Though Plaintiffs assert a litany of legal theories against both U.S. Steel and Birmingham, the only ones with any chance of success are their nuisance and wantonness claims against U.S. Steel. Birmingham cannot be held liable on any of Plaintiffs' claims, and U.S. is entitled to summary judgment as to eight plaintiffs whose claims are barred by an exculpatory covenant bargained for by U.S. Steel and agreed to by those plaintiffs' predecessor in title. Thus, as more fully explained below, Birmingham is entitled to be dismissed from this case with prejudice, U.S. Steel is entitled to judgment against eight of the Plaintiffs, and the remaining Plaintiffs may proceed with their surviving nuisance and wantonness claims against U.S. Steel. Finally, U.S. Steel's motion to strike is due to be denied as moot.

### A.  Birmingham's Motion to Dismiss Is Due to Be Granted

Plaintiffs assert claims for private nuisance, attractive nuisance, nuisance per se, negligence, negligence per se, trespass, and wantonness against Birmingham. They seek

damages and an injunction requiring Birmingham to enforce applicable state statutes against U.S. Steel. But because each cause of action Plaintiffs assert against the City fails to state a viable claim, they are entitled to neither damages nor injunctive relief on those claims. Thus, Birmingham's motion to dismiss is due to be granted in its entirety.

### 1. Plaintiffs Fail to State a Negligence Claim Against Birmingham

Plaintiffs assert both negligence and negligence per se claims against Birmingham. (Doc. # 57 at ¶¶ 49-51, 73-78). Neither one has any merit.

To state a claim for negligence, a plaintiff must allege "(1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury." *DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008). Plaintiffs' negligence claim fails because they cannot establish the first element of a negligence action—that Birmingham owed them a duty to enforce certain state statutes against U.S. Steel. To be sure, Plaintiffs state in their Amended Complaint that Birmingham "has a duty" "to enforce the [relevant] statutes" against U.S. Steel, but they provide no legal support for that claim. (Doc. # 57 at ¶ 4). Plaintiffs' lack of legal authority on this point is unsurprising, as the court's own research reveals that none exists. Simply put, municipalities have no duty under Alabama negligence law to enforce all applicable statutes against anyone who violates them.

This makes sense. Given municipalities' limited resources, they must inevitably choose to prosecute some violations of the law and not others. In the criminal context, the decision whether to prosecute "generally rests entirely in [the prosecutor's] discretion," *Wayte v. United States*, 470 U.S. 598, 607 (1985), and that is just as true in a case like this that involves only civil

enforcement.[5] It would be an odd result indeed if Alabama tort law imposed a duty (which may well be an impossible duty) on municipalities to prosecute all violations of the State's civil code. Because Plaintiffs cannot establish the first element of their negligence claim, the claim is due to be dismissed.

It is unclear from the Amended Complaint whether Plaintiffs even intend to assert a negligence per se claim. The term appears only once in the Amended Complaint, in the caption for Count Eight ("Trespass, Negligence Per Se & Private Nuisance"), and Plaintiffs do provide any further factual or legal support for the claim. (Doc. # 57 at 21). But to the extent Plaintiffs intend to assert a negligence per se claim, it too fails. A critical element of any negligence per se claim in Alabama is that "the defendant must have violated [a] statute." *Parker Bldg. Servs. v. Lightsey* ex rel. *Lightsey*, 925 So. 2d 927, 931 (Ala. 2005). Here, Plaintiffs fail to allege that Birmingham has violated any statute by declining to enforce certain Alabama civil code provisions against U.S. Steel.[6] Because Plaintiffs have failed to "show the existence of a statute creating a mandatory duty to perform," their negligence per se claim is due to be dismissed. *Norris v. City of Montgomery*, 821 So. 2d 149, 153 (Ala. 2001).

## 2. Plaintiffs' Trespass and Wantonness Claims Against Birmingham Fail as a Matter of Law

Plaintiffs' trespass and wantonness claims against Birmingham fail as a matter of law because Alabama municipalities cannot be held liable for intentional or wantonness torts.

---

[5] It is true that the exercise of prosecutorial discretion is subject to constitutional constraints. Thus, "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte*, 470 U.S. at 608 (internal quotation marks omitted). In this litigation, however, Plaintiffs do not challenge Birmingham's decision not to bring a civil enforcement action against U.S. Steel on any constitutional ground.

[6] Indeed, the relevant statutes do not require municipalities to abate a public nuisance at all, but merely give them discretion to do so. *See* Ala. Code § 6-5-122 ("All municipalities in the State of Alabama *may* commence an action in the name of the city to abate or enjoin any public nuisance . . . .") (emphasis added); Ala. Code § 11-67-60 (providing that overgrown grass or weeds "*may* be declared to be a public nuisance by the municipal governing body") (emphasis added).

Alabama's legislature has largely immunized municipalities from tort liability, subject to certain enumerated exceptions which arise in specified circumstances. The applicable statute provides in relevant part: "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the *neglect, carelessness, or unskillfulness* of [the municipality's agent or employee]." Ala. Code § 11-47-190 (emphasis added). Section 11-47-190 thus provides broad tort immunity to municipalities, subject to an enumerated exception for negligent conduct by the municipality's agents and employees. It therefore bars claims for intentional and wantonness torts against municipalities. *See Cremeens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000) ("A municipality cannot be held liable for the intentional torts of its employees."); *Morrow v. Caldwell*, 153 So. 3d 764, 769 (Ala. 2014) ("There is no exception in [§ 11-47-190] allowing an action against a municipality for the wanton or willful conduct of its agents or employees."). Plaintiffs apparently concede that their trespass and wantonness claims against Birmingham fail for this reason. (Doc. # 71 at 13). The claims are therefore due to be dismissed.

### 3. Plaintiffs Fail to State Any Nuisance Claims Against Birmingham

Plaintiffs' private nuisance, attractive nuisance, and nuisance per se claims against Birmingham all fail because the City owes no duty to Plaintiffs to abate a nuisance on U.S. Steel's property resulting from U.S. Steel's neglect.[7]

A nuisance in Alabama is statutorily defined as "anything that works hurt, inconvenience, or damage to another." Ala. Code § 6-5-120. The Alabama Supreme Court has held that this

---

[7] Plaintiffs' attractive nuisance and nuisance per se claims fail for other reasons as well. As explained in Part III.B.1 below, the attractive nuisance doctrine "applies only where trespassing children are involved." *Tolbert v. Gulsby*, 333 So. 2d 129, 132 (Ala. 1976). Because none of the plaintiffs in this case are children or are suing on behalf of children, and because none of the plaintiffs claim to have trespassed on U.S. Steel's property, their attractive nuisance claims fail as a matter of law. Plaintiffs' nuisance per se claims also fail because, as explained in Part III.B.1 below, the conditions alleged in the Amended Compliant would not make Ensley Works "a nuisance at all times and under any circumstances, regardless of location or surroundings." *McCord v. Green*, 555 So. 2d 743, 745 (Ala. 1989), *overruled on other grounds by Parker v. Ashford*, 661 So. 2d 213 (Ala. 1995).

statutory definition of nuisance is "declaratory of the common law and does not supersede it as to the other conditions and circumstances constituting a nuisance under common law." *Lauderdale Cty. Bd. of Ed. v. Alexander*, 110 So. 2d 911, 915 (Ala. 1959). One common-law requirement of any nuisance claim is that the plaintiff must prove "the elements of legal duty and causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for." *Tipler v. McKenzie Tank Lines*, 547 So. 2d 438, 440 (Ala. 1989). Here, Plaintiffs' nuisance claims against Birmingham fail because, even assuming the conditions at Ensley Works constitute a nuisance, Plaintiffs cannot establish that Birmingham owed them a duty to abate a nuisance created and maintained on a private company's property through that company's own neglect. Two Alabama Supreme Court cases are instructive on this point.

In *Tipler*, the plaintiff was injured when a tractor trailer bound for a nearby Exxon facility struck his vehicle. *Id.* at 439-40. Because of the road design near the Exxon facility, trucks approaching the facility had to drive their rigs completely into the oncoming lane of traffic to complete a particular right turn as they approached the facility. *Id.* It was during such a right turn that a tractor trailer collided with the plaintiff's vehicle. *Id.* The plaintiff sued Exxon for creating and maintaining a public nuisance, arguing that Exxon's operation caused both lanes of traffic on the nearby highway to be blocked some 40 times per day by approaching trucks, thereby creating a highly dangerous condition. *Id.* at 439-41. The Alabama Supreme Court affirmed summary judgment for Exxon on the nuisance claim, reasoning that the plaintiff failed to establish both the duty and proximate cause elements of a nuisance claim. *Id.* at 441. The court explained, "Exxon cannot be charged and held liable either for maintaining, or for failing to prevent, a chain of events and circumstances over which it had no reasonable means of control." *Id.* In short, Exxon

had no duty to "assume the responsibility of reconstructing the public highways" near its facility or to otherwise abate the traffic hazard. *Id.*

In *Russell Corp. v. Sullivan*, 790 So. 2d 940, 945-46 (Ala. 2001), the Alabama Supreme Court reversed a trial court's nuisance judgment because the plaintiffs failed to establish a legal duty to support their nuisance claim. There, two textile manufacturers allegedly discharged harmful chemicals in wastewater from their textile plants. *Russell*, 790 So. 2d at 942. The wastewater was then treated at a municipal wastewater treatment plant before being released into Sugar Creek, which flows into Lake Martin. *Id.* Alabama Power Company ("APCo") owned Lake Martin, which it used to generate power. *Id.* The plaintiffs, who all owned property along Lake Martin, sued APCo for permitting a nuisance (harmful chemicals in Lake Martin) to be created and maintained on its property. *Id.* at 945. The court rejected the nuisance claim because the plaintiffs failed to show that APCo had a duty to control any discharge into Lake Martin. *Id.* at 945-46. As the court explained, "Where a plant discharges effluent into a stream that ultimately runs into a reservoir created by a dam, the owner of the reservoir cannot be liable for maintaining a nuisance, absent evidence indicating that it authorized or participated in the deposit of pollutants or that it had control over the deposits." *Id.*

Just as in *Tipler* and *Russell*, Plaintiffs cannot show that Birmingham had a duty to abate any nuisance resulting from U.S. Steel's neglect of the Ensley Works property. Exxon was not responsible for the design of state highways in *Tipler*, nor was APCo responsible for the upstream discharge of chemicals in *Russell*. Similarly, here, Birmingham is not responsible for nuisance conditions on a private company's property created by that company's own neglect. It is of course true that Birmingham has the authority to abate public nuisances. *See* Ala. Code § 6-5-122 ("All municipalities in the State of Alabama may commence an action in the name of the

city to abate or enjoin any public nuisance . . . ."); Ala. Code § 11-67-60 (providing that overgrown grass or weeds "may be declared to be a public nuisance by the municipal governing body and abated as provided in this article"). But having the authority to abate a public nuisance is not the same thing as having a *duty* to do so. And in fact, the statutes conferring upon Birmingham the authority to abate public nuisances also grant Birmingham discretion in deciding whether to abate any particular nuisance by using phrases like "*may* commence an action" and "*may* be declared" a public nuisance. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012) (explaining that permissive words like "may" grant discretion). Because Plaintiffs cannot establish the existence of a legal duty to support their nuisance claims against Birmingham, the claims must be dismissed.

For these reasons, Birmingham's motion to dismiss (Doc. # 67) is due to be granted.

## B. U.S. Steel's Motion to Dismiss Is Due to Be Granted in Part

In addition to their claims against Birmingham, Plaintiffs have also sued U.S. Steel for private nuisance, attractive nuisance, nuisance per se, negligence, negligence per se, trespass, and wantonness, seeking both damages and injunctive relief. Importantly, though the Amended Complaint states that all the plaintiffs are "residents within the Ensley Sherman Heights Neighborhood," it does not allege that they all reside upon property abutting Ensley Works. (Doc. # 57 at ¶ 1). The court therefore distinguishes between those plaintiffs who reside on property adjacent to Ensley Works (the "Adjacent Plaintiffs") and those who do not (the "Nonadjacent Plaintiffs"). It does so for two reasons: first, the viability of certain claims against U.S. Steel depends on whether they are asserted by plaintiffs who reside on property adjacent to Ensley Works; and second, because U.S. Steel is entitled to summary judgment on all claims

asserted by the Adjacent Plaintiffs, the court need not decide whether those claims survive U.S. Steel's motion to dismiss.

As explained below, both the Adjacent and Nonadjacent Plaintiffs' attractive nuisance and nuisance per se claims must be dismissed. The Nonadjacent Plaintiffs' negligence, negligence per se, and trespass claims likewise must be dismissed. However, the Nonadjacent Plaintiffs have adequately alleged claims for private or public nuisance and wantonness. Finally, the court need not decide whether the Adjacent Plaintiffs have stated claims for private or public nuisance, negligence, negligence per se, trespass, or wantonness, because U.S. Steel is entitled to summary judgment on those claims in any event for the reasons explained in Part III.C below.

### 1. Both the Adjacent and Nonadjacent Plaintiffs Fail to State Attractive Nuisance or Nuisance Per Se Claims Against U.S. Steel

The attractive nuisance doctrine "offers an exception to the limited duty owed by a landowner to a trespasser," but it "applies only where trespassing children are involved." *Tolbert v. Gulsby*, 333 So. 2d 129, 132 (Ala. 1976). Because none of the plaintiffs in this case are children or are suing on behalf of children, and because none of the plaintiffs claim to have trespassed on U.S. Steel's property, their attractive nuisance claims fail as a matter of law.

Plaintiffs' nuisance per se claims are likewise due to be dismissed. "A nuisance per se is an act, occupation, or structure that is a nuisance at all times and under any circumstances, regardless of location or surroundings." *McCord v. Green*, 555 So. 2d 743, 745 (Ala. 1989), *overruled on other grounds by Parker v. Ashford*, 661 So. 2d 213 (Ala. 1995). "The number of nuisances per se is necessarily limited." *Id.* "Generally, activities or structures that are not illegal are not nuisances per se." *Id.*

Plaintiffs claim Ensley Works constitutes a nuisance per se because it accumulates "trash, garbage, refuse, debris, graffiti, sinkholes, weeds, overgrown vegetation and other offensive,

dangerous and unhealthy matter." (Doc. # 57 at ¶ 71). But those conditions would not make Ensley Works "a nuisance at all times and under any circumstances, regardless of location or surroundings." *McCord*, 555 So. 2d at 745. For instance, landfills contain trash, garbage, refuse, and debris; yet, they are not automatically a nuisance at all times and in all places. *See Kirk v. McTyeire*, 95 So. 361, 362 (Ala. 1923) ("A suitably located and properly operated plant for burning garbage is not a nuisance."). Similarly, wild lands contain sinkholes, weeds, and overgrown vegetation; but, they likewise are not thereby a nuisance per se. Instead, Alabama courts have generally limited nuisance per se claims to cases in which the alleged harm is so injurious to public health or morals that it could not safely exist in any locale. *See Hundley v. Harrison*, 26 So. 294, 294 (Ala. 1899) ("Nuisances per se have been defined to be such things as are nuisances at all times and under all circumstances, irrespective of location or surroundings, as things prejudicial to public morals, as disorderly houses; or dangerous to life, as powder magazines, or nitroglycerine works; or injurious to public rights, as obstructions to highways and navigable streams."). Thus, the classic example of a nuisance per se in Alabama is a brothel. *See Barnett v. Tedescki*, 45 So. 904, 905 (Ala. 1908). Because the facts alleged in the Amended Complaint do not render Plaintiffs' nuisance per se claims plausible,[8] the claims are due to be dismissed.

## 2. The Nonadjacent Plaintiffs Fail to State a Trespass Claim Against U.S. Steel

Plaintiffs do not allege that anyone from U.S. Steel has directly trespassed upon their property. Instead, they allege indirect trespass based on "hazardous weeds," "large rodents," and "overgrown trees" that "extend onto their property from [U.S. Steel's] adjacent property." (Doc. # 57 at ¶ 75). To establish indirect trespass in Alabama, "a plaintiff must show 1) an invasion

---

[8] Of particular note given Plaintiffs' allegations, the Alabama Supreme Court has expressly held that "[t]he carcass of an animal is not per se a nuisance, and is not necessarily dangerous to the public health." *Kirk*, 95 So. at 362.

affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the [invaded property]." *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529 (Ala. 1979).

The Nonadjacent Plaintiffs have no indirect trespass claim at all because Plaintiffs only allege an invasion of property *adjacent* to U.S. Steel's land. *See* (Doc. # 57 at ¶ 75) (alleging that weeds, rodents, and overgrown trees "extend onto Plaintiffs' property from the *adjacent* property owned by [U.S. Steel].")). To the extent any Nonadjacent Plaintiffs base their indirect trespass claims on allegations that wild animals have migrated from Ensley Works onto their property, such claims would fail for at least two reasons. First, Plaintiffs have alleged no intentional act by U.S. Steel that has caused the wild animals to enter the Nonadjacent Plaintiffs' property. *Cf. Seaboard Air Line R. Co. v. Richmond-Petersburg Tpk. Auth.*, 121 S.E.2d 499, 501-02 (Va. 1961) (owner of bridge over parking lot was not liable in tort to parking lot owner for damages caused by the droppings of pigeons roosting under the bridge, because wild pigeons are a natural condition and a private person cannot be held liable for their trespasses). Second, Plaintiffs have not alleged that the trespassing animals have caused any "substantial actual damage" to their property. *Borland*, 369 So. 2d at 530.

The court need not decide whether the Adjacent Plaintiffs have stated a claim for indirect trespass because in any event, as explained below, U.S. Steel is entitled to summary judgment on such claims for other reasons.

### 3. The Nonadjacent Plaintiffs Fail to State Negligence or Negligence Per Se Claims Against U.S. Steel

The Nonadjacent Plaintiffs' negligence and negligence per se claims against U.S. Steel fail because they have not alleged damages cognizable under negligence law. The Amended

Complaint identifies the two types of damages that support Plaintiffs' negligence claims: (1) expenses and economic losses incurred "for abatement" and (2) declining real estate values. (Doc. # 57 at ¶ 50).[9] Neither one of those theories can support negligence or negligence per se claims by the Nonadjacent Plaintiffs.[10]

In the negligence section of their Amended Complaint, Plaintiffs do not describe what expenses or economic losses "for abatement" they have incurred, but presumably they refer to the expenses referenced in the trespass section of the Amended Complaint—payments Plaintiffs have allegedly made to abate hazardous weeds, exterminate large rodents, and cut overgrown trees that extend onto their property "from the *adjacent* property owned by [U.S. Steel]." (*Id.* at ¶ 75) (emphasis added). If that is the case (and, so be sure, those are the only abatement expenses detailed in the Amended Complaint), then the Nonadjacent Property owners have not alleged they incurred those expenses, since their property is not adjacent to U.S. Steel's.[11] Thus, only the Adjacent Plaintiffs can possibly maintain negligence claims based on expenses incurred to abate encroaching weeds, trees, and rodents, and U.S. Steel is entitled to summary judgment on any such claims for the reasons explained below.

Allegations about declining real estate values also cannot support a negligence claim by the Nonadjacent Plaintiffs. U.S. Steel simply has no freestanding tort duty to avoid causing a

---

[9] Plaintiffs also make the conclusory allegation that U.S. Steel's negligence has "adversely affect[ed] their property," but they do not provide any factual elaboration to support this legal conclusion, such as allegations of property damage or other damages cognizable under negligence law. Such "labels and conclusions" do not satisfy Rule 8's pleading standard. *Twombly*, 550 U.S. at 555.

[10] The Nonadjacent Plaintiffs' negligence per se claims also fail because they have identified no statutory violation by U.S. Steel that could support a negligence per se claim. *See Parker Bldg. Servs.*, 925 So. 2d at 931.

[11] To the extent any Nonadjacent Plaintiffs claim to have incurred expenses to exterminate rodents that have traversed from U.S. Steel's property to their own property, any negligence claims based on such expenses would fail because U.S. Steel has no duty to control the movement of wild animals that have left its property and entered onto nonadjacent properties. *Cf. Merriam v. McConnell*, 175 N.E.2d 293, 294, 296-97 (Ill. App. Ct. 1961) (no liability where defendant grew box elder trees on his property that became infested with box elder bugs, which entered plaintiff's adjacent property and caused plaintiff to expend money to clean, repair, and replace his home's furnishings).

decrease in real estate values. All sorts of legitimate structures and activities on a property may have an adverse impact on the real estate values of surrounding parcels, but that does not give the owners of the adversely affected parcels a tort claim. *See Hammond v. City of Warner Robins*, 482 S.E.2d 422, 432 (Ga. Ct. App. 1997) ("Mere diminution in property value . . . in and of itself, does not constitute an actionable nuisance . . . ."); *Sanders v. Henry Cty.*, 484 Fed. App'x 395, 400 (11th Cir. 2012) (rejecting nuisance claim based on depreciation of plaintiff's property caused by construction of cellular tower on nearby property); *Roper v. Durham*, 353 S.E.2d 476, 478 (Ga. 1987) (rejecting nuisance claim based on unsightly fence that devalued adjoining property). The parties have cited no authority suggesting that landowners have a general duty to avoid engaging in conduct that may adversely affect surrounding real estate values, and the court's own research has revealed no such authority.

Of course, decreased property values may be a measure of damages when a property owner has engaged in negligent conduct that tangibly harms the property of another or interferes with another's use or enjoyment of his property. *See Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792, 801 (Ala. 2007) (diminution in property value was proper measure of damages where oil pipeline leak caused physical damage to nearby property); *Swedenberg v. Phillips*, 562 So. 2d 170, 172 (Ala. 1990) ("In a continuing nuisance case involving injury to real property caused by noxious odors, the measure of damages for injury to the real property is the difference in the value of the real property with and without such odors."). But the Nonadjacent Plaintiffs have not alleged any physical damage to their properties. And any claim of interference with the use and enjoyment of their properties is properly vindicated through a nuisance claim, as discussed below, rather than a negligence claim. The Nonadjacent Plaintiffs' negligence claims must

therefore be dismissed. Again, the court need not address the Adjacent Plaintiffs' negligence claims because U.S. Steel is entitled to summary judgment on those claims in any event.

### 4. The Nonadjacent Plaintiffs Have Adequately Alleged Private or Public Nuisance and Wantonness Claims Against U.S. Steel

A nuisance in Alabama is statutorily defined as "anything that works hurt, inconvenience, or damage to another." Ala. Code § 6-5-120. The Alabama Supreme Court has held that this statutory definition is "declaratory of the common law and does not supersede it as to the other conditions and circumstances constituting a nuisance under common law." *Alexander*, 110 So. 2d at 915. Nuisances in Alabama are classified as "either public or private." Ala. Code § 6-5-121. "A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." *Id.* "A private nuisance," by contrast, "is one limited in its injurious effects to one or a few individuals." *Id.* A public nuisance generally "gives no right of action to any individual, but must be abated by a process instituted in the name of the state." *Id.* "A private nuisance," however, "gives a right of action to the person injured." *Id.*

The Nonadjacent Plaintiffs claim the conditions on U.S. Steel's property constitute a private nuisance. U.S. Steel responds that, if the conditions at Ensley Works are a nuisance at all, they are a public nuisance and thus give no right of action to the private plaintiffs in this case. According to U.S. Steel, because the conditions at Ensley Works allegedly affect a broad surrounding area, and far more than "one or a few individuals," *see* Ala. Code § 6-5-121, the Nonadjacent Plaintiffs cannot maintain a private nuisance claim against U.S. Steel. The court is inclined to agree with U.S. Steel that Plaintiffs' allegations about the conditions at Ensley Works allege a public nuisance rather than a private one. But the court need not decide at this point whether to classify Plaintiff's allegations as sounding in public or private nuisance because,

based on the allegations in the Amended Complaint, the Nonadjacent Plaintiffs have a right of action in either event. Though a public nuisance does not generally give private individuals a right of action, a public nuisance that "causes a special damage to an individual in which the public does not participate" does give that individual a private right of action. Ala. Code § 6-5-123; *see also Russell*, 790 So. 2d at 951 (explaining that such "special damage" must be "different in kind and degree from [the damage] suffered by the public in general") (quotation marks omitted) (alteration in original). Here, the Amended Complaint plausibly alleges either "a private nuisance or a public one from which [the Nonadjacent Plaintiffs have suffered] a special injury different in kind from that suffered by the public generally." *Strickland v. Lambert*, 109 So. 2d 664, 665 (Ala. 1959). Thus, the Nonadjacent Plaintiffs are entitled to proceed with their nuisance claim. *See id.*

The Amended Complaint identifies a variety of conditions on U.S. Steel's property that allegedly constitute a nuisance: obnoxious weeds and overgrown vegetation; animal pests such as snakes, rodents, and bobcats; dilapidated and unsafe buildings; trash, refuse, and the bodies of deceased humans and animals; and obnoxious vagrants and vagabonds who loiter on U.S. Steel's property day and night and disturb Plaintiffs' quiet enjoyment of their property. The court acknowledges that not all of these conditions have inflicted a special injury upon the Nonadjacent Plaintiffs. For example, the Nonadjacent Plaintiffs do not claim to have suffered an injury from the overgrown weeds and vegetation or unsafe and dilapidated buildings at Ensley Works different in kind from that suffered by the general public—namely, having to experience their general unsightliness. But some of these conditions do allegedly injure the Nonadjacent Plaintiffs in a manner different in kind and degree from the general public and are therefore sufficient to render a public nuisance claim plausible.

In particular, Plaintiffs allege that U.S. Steel has permitted its property to be used as a dumping ground for trash, refuse, animal carcasses, and deceased human bodies and that these conditions have caused offensive odors to emanate from the property, which interfere with the comfortable enjoyment of Plaintiffs' property.[12] Alabama courts have routinely held that offensive odors from nearby properties constitute a special injury and therefore give private plaintiffs the right to bring a public nuisance action to abate the odors. A case in point is *Monsanto Chem. Co. v. Fincher*, 133 So. 2d 192 (Ala. 1961). There, the plaintiffs alleged that severe odors from a nearby insecticide plant interfered with the use and enjoyment of their property and diminished their property values. *Fincher*, 133 So. 2d at 194. The court held that each plaintiff had alleged a special "injury in which no one else participates, although others may suffer a like injury to the enjoyment of their separate property." *Id.* The court concluded that the plaintiffs' allegations stated a claim for either a private nuisance or a public nuisance from which the plaintiffs suffered a special injury. *Id.* Other cases are in accord. *See Strickland*, 109 So. 2d at

---

[12] This is actually being very generous to Plaintiffs. The operative Amended Complaint (Doc. # 57) does not in fact expressly allege that offensive odors emanate from U.S. Steel's property or that the Nonadjacent Plaintiffs can detect such odors from their residences. However, the operative Amended Complaint "adopt[s] and re-allege[s] each and every material allegation set forth in the preceding complaints," (Doc. # 57 at ¶ 40), and Plaintiffs' original state court complaint contains allegations regarding offensive odors. *See* (Doc. # 1-1 at 8-9, ¶¶ 22-23, 25) (complaining of "obnoxious" and "offensive" odors that "unreasonably offend the senses" and "interfere[ ] with the comfortable enjoyment" of Plaintiffs' property). Additionally, the allegations of the operative Amended Complaint -- that Ensley Works serves as a dumping ground for "refuse, trash, animal carcasses," and "deceased bodies of humans" -- certainly make it plausible that the property would generate strong odors, if true. (Doc. # 57 at ¶ 20). Finally, references in Plaintiffs' motion to dismiss briefing (Doc. # 70 at 11, 13-14) to "odor control," "[m]old and mildew odors," and "odors [that] have traveled from US Steel's property onto" Plaintiffs' property suggest that Plaintiffs' counsel intended to include odor allegations in the operative Amended Complaint. But instead of providing all material factual allegations supporting Plaintiffs' nuisance claims in the operative Amended Complaint, Plaintiffs' counsel chose another route—incorporating by reference all material factual allegations contained in Plaintiffs' previous complaints.

Incorporating prior factual allegations by reference within the *same* complaint renders the complaint a "shotgun pleading," a practice that has been repeatedly condemned by the Eleventh Circuit. *See, e.g.*, *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 & n.8 (11th Cir. 2018). It is even worse when a party's counsel fails to take the time to allege all material facts within a single operative complaint and instead incorporates by reference factual allegations contained in *previous* judicial complaints. In this case, the operative Amended Complaint incorporates the "material" factual allegations of *five* previous complaints. *See* (Docs. # 1-1 at 3; 1-2 at 101; 1-4 at 12; 43; 52). The court would be within its authority to dismiss Plaintiffs' nuisance claim with prejudice under these circumstances. *See Jackson*, 898 F.3d at 1356-58. But at this stage of the case, the court will bend over backward to "rewrite[e] the complaint into an intelligible document a competent lawyer would have written," *id.* at 1357, and to "view the allegations in [that rewritten complaint] in the light most favorable to" Plaintiffs, *Watts*, 495 F.3d at 1295.

665-67 (Ala. 1959) (severe odors and flies from poultry plant constituted special injury and permitted private plaintiff to maintain public nuisance action); *City of Selma v. Jones*, 79 So. 476, 478 (Ala. 1918) (reaching same conclusion based on severe odors from dump pile maintained by the city). Whether the odors or other unpleasant conditions allegedly present on U.S. Steel's property are severe enough to constitute a nuisance is a fact question that cannot be resolved on a motion to dismiss. *See* Ala. Code § 6-5-120 (providing that an actionable nuisance "must not be fanciful or such as would affect only one of a fastidious taste," but must instead "be such as would affect an ordinary reasonable man"). Accordingly, U.S. Steel's motion to dismiss the Nonadjacent Plaintiffs' private or public nuisance claims is due to be denied.

Plaintiffs also allege that U.S. Steel engaged in wanton misconduct by failing to abate the nuisance conditions on its property. (Doc. # 57 at ¶¶ 52-53). "What constitutes wanton misconduct depends upon the facts presented in each particular case." *Brown v. Turner*, 497 So. 2d 1119, 1120 (Ala. 1986). But in every case, wantonness requires proof that a party "consciously and intentionally did some wrongful act or omitted some known duty" "with reckless indifference to the consequences." *Id.* Here, Plaintiffs claim they repeatedly complained to U.S. Steel about the nuisance conditions at Ensley Works, but to no avail. (Doc. # 57 at ¶ 71). Thus, they allege U.S. Steel knew about the nuisance conditions at Ensley Works and the adverse effects those conditions were having upon Plaintiffs, but chose to do nothing about them. (*Id.* at ¶ 53). These allegations render Plaintiffs' wantonness claims plausible, and U.S. Steel's motion to dismiss these claims is accordingly due to be denied.

Because U.S. Steel is entitled to summary judgment on the Adjacent Plaintiffs' nuisance and wantonness claims, as explained below, the court need not decide whether those claims survive U.S. Steel's motion to dismiss.

For these reasons, U.S. Steel's motion to dismiss (Doc. # 64) is due to be granted in part.

## C. U.S. Steel's Motion for Summary Judgment as to Certain Plaintiffs Is Due to Be Granted

In addition to its motion to dismiss the Amended Complaint, U.S. Steel has also moved for summary judgment as to all claims by Plaintiffs Leisa Mincy, Mary Norman, Henrietta Woods, Linda Bufford, Rosalind Clayton, Martha Smith, Anne Thomas, and Jessica Young (the "Prior Covenant Plaintiffs"). (Doc. # 62). U.S. Steel argues that all of the claims asserted by these eight plaintiffs are barred by an exculpatory covenant bargained for by U.S. Steel and agreed to by the Prior Covenant Plaintiffs' predecessor in title. The court agrees. After careful review, and for the reasons explained below, U.S. Steel is entitled to summary judgment on all claims asserted by the eight plaintiffs named above.

### 1. The Undisputed Facts

In the early 1990s, a developer asked U.S. Steel to sell an approximately seven-acre parcel on the outskirts of the Ensley Works site for the proposed development of a new subdivision of affordable housing, Sherman Heights Estates. (Doc. # 61 at 9, ¶ 3). Both the City of Birmingham and the Sherman Heights Neighborhood Association actively supported the proposed project, describing it as a way to combat the steady trend of deterioration in the neighborhood. (*Id.*). In an effort to support a worthwhile project, U.S. Steel agreed to sell the seven-acre parcel to Birmingham for a below-market price—$100, to be precise. (*Id.* at 9, ¶ 4; *id.* at 14). U.S. Steel conveyed the 7.4-acre parcel to Birmingham by a warranty deed dated September 29, 1992, and the deed was duly recorded in the Probate Office of Jefferson County. (*Id.* at 9, ¶ 4; *id* at 13-17).

While U.S. Steel wished to support Birmingham's neighborhood redevelopment efforts in Sherman Heights, it was unsure how the remaining acreage of the Ensley Works property might

be used in the future. (*Id.* at 9, ¶ 5). U.S. Steel thus bargained for broad exculpatory language in the warranty deed, to which Birmingham agreed. (*Id.* at 9, ¶ 5). The deed provided, in relevant part:

> This conveyance is made upon the covenant and condition which shall constitute a covenant running with the land that neither the Grantor nor [any of its affiliated entities] shall at any time become liable to the Grantee or to Grantee's successor or successors in title for damages on account of injuries [1] to the land herein conveyed or [2] to any buildings, structures, improvements or property of any kind now or hereafter located upon said land or [3] to any owners or occupants or other persons in or upon said land resulting from the operations of the steel making facility . . . or any other operations under the control of [the Grantor or its affiliates], and no right of action shall ever accrue to or be asserted by Grantee or Grantee's successors in title or anyone else for damages on account of [1] injuries to the land herein described or [2] to any buildings, structures, improvements or property of any kind now or hereafter located upon said land or [3] to any owners or occupants or other persons in or upon said land resulting from said operations. Without in any way limiting the generality of the provisions of this paragraph the word "damages" as herein used shall be held to include . . . (b) damage which . . . might be claimed to have resulted from the maintenance of a nuisance because of said operations of [the Grantor or its affiliates] . . . and (i) damages resulting from abandoned surface facilities of [the Grantor or its affiliates].

(*Id.* at 14-15).

Birmingham's redevelopment project went forward as planned, and affordable housing was constructed on the property previously owned by U.S. Steel. (*Id.* at 9, ¶ 6). The Prior Covenant Plaintiffs, that is, the eight plaintiffs against whom U.S. Steel now moves for summary judgment, all currently reside on the 7.4-acre parcel conveyed by U.S. Steel to Birmingham. (*Id.* at 9-10, ¶ 6). Five of the Prior Covenant Plaintiffs reside on parcels that directly abut Ensley Works; the other three do not reside on parcels directly adjacent to Ensley Works. (*Id.* at 10, ¶ 7). None of the remaining named plaintiffs to this lawsuit have residences or properties that directly abut Ensley Works. (*Id.* at 10, ¶ 7).

## 2. Analysis

The five adjacent Prior Covenant Plaintiffs and three nonadjacent Prior Covenant Plaintiffs who are the subject of U.S. Steel's summary judgment motion assert various claims arising out of the conditions on U.S. Steel's property. Construing their Amended Complaint generously, the Prior Covenant Plaintiffs allege that (1) obnoxious weeds and vegetation from U.S. Steel's property have encroached upon their property; (2) that animal pests from U.S. Steel's property have migrated onto their property; (3) that the dilapidated and unsafe buildings on U.S. Steel's property are an eyesore; (4) that the trash, refuse, and deceased human and animal bodies permitted to accumulate on U.S. Steel's property generate offensive odors that they can detect from their properties; and (5) that obnoxious vagrants whom U.S. Steel permits to trespass upon the Ensley Works site somehow disturb their ability to quietly enjoy their property. Even taking these allegations as true (and, to be clear, the court does), the Prior Covenant Plaintiffs' claims are barred by the exculpatory language contained in the 1992 warranty deed, and U.S. Steel is therefore entitled to summary judgment on these claims. Two premises dictate this conclusion. First, Alabama law gives effect to exculpatory covenants like the one bargained for by U.S. Steel. Second, the exculpatory covenant bargained for by U.S. Steel unambiguously covers the Prior Covenant Plaintiffs' claims.

### a) Alabama Law Permits Exculpatory Covenants Like the One Bargained for by U.S. Steel

The general rule governing exculpatory clauses in Alabama is that a party may not contract out of liability resulting from his own negligence. *See Majors v. Kalo Labs., Inc.*, 407 F. Supp. 20, 24 (M.D. Ala. 1975) (collecting cases). However, this rule is subject to certain exceptions. *Id.* One well-established exception holds that bargained-for exculpatory provisions in real property deeds that release the grantor from future claims by the grantee or the grantee's

successors in title are valid and enforceable. Three Alabama Supreme Court cases aptly illustrate the principle.

*Republic Steel Corp. v. Payne*, 132 So. 2d 581 (Ala. 1961) involved claims against Republic Steel Corporation for injuries suffered from inhaling smoke fumes and gases caused by Republic's mining operations. The plaintiffs lived in a house on land adjacent to Republic's operations, which they leased from the owners of the house and land. *Republic Steel*, 132 So. 2d at 582. The owners had previously purchased the adjacent land from Republic. *Id.* Republic's deed to the owners, which was duly recorded in the appropriate probate office, contained an exculpatory covenant nearly identical to the one at issue in this case. *Id.* at 582-83. The covenant specifically provided (1) that "neither [Republic nor any of its affiliates] shall at any time become liable to the Purchasers or [their successors in interest]" for damages "resulting from or in any way connected with" Republic's operations and (2) that "Purchasers [and their successors in interest] do waive and release [Republic and its affiliates] from any and all claims for damages . . . which may in any way be caused or occasioned at any time" by Republic's operations. *Id.* at 583. The deed also contained the following provision: "it is understood that the conditions, covenants, easements, reservations and exceptions herein set out have materially reduced the amount of the consideration of this conveyance." *Id.* at 584.

The court held that the exculpatory covenant barred the plaintiffs' negligence and wantonness claims against Republic Steel because the plaintiffs had constructive notice of the covenant. *Id.* Even though the language of the deed did not explicitly refer to "negligence" claims, the court reasoned that the provisions releasing Republic "from *any* and *all* claims for damages and *all* liability by reason of damages . . . which may *in any way* be caused or occasioned at any time" were sufficient to shield Republic from liability. *Id.* at 586 (emphasis in

original) (internal quotation marks omitted). The court likewise concluded that the plaintiffs could not maintain a wantonness claim against Republic, even if Republic knew its gases and fumes would probably cause injury to the plaintiffs, because the exculpatory covenant granted Republic the right to do the very thing of which the plaintiffs complained—namely, engage in mining operations (with their attendant gases and fumes). *Id.* Because the deed made clear that the sale price of the land was reduced in consideration for the exculpatory covenant, the court explained that the purchasers of the land had effectively "contracted for all damages to be done to them, and their successors in interest." *Id.* at 585. Finally, the court explained that the exculpatory covenant was not against public policy since it was "incident to the ownership of lands and does not involve a person or corporation engaged in public service." *Id.* at 584-85. The court thus enforced the exculpatory covenant and reversed the trial court's judgment in favor of the plaintiffs. *Id.* at 586.

The Alabama Supreme Court reached similar results in *Eastwood Lands, Inc. v. U.S. Steel Corp.*, 417 So. 2d 164 (Ala. 1982) and *Holmes v. Alabama Title Co.*, 507 So. 2d 922 (Ala. 1987). In both cases, landowners sued U.S. Steel for damages to the surface of their properties caused by U.S. Steel's mining operations beneath their properties. *Eastwood Lands*, 417 So. 2d at 166; *Holmes*, 507 So. 2d at 924. Eastwood Lands sued for negligence, *Eastwood Lands*, 417 So. 2d at 167, and the *Holmes* plaintiffs sued for negligence, wantonness, trespass, and nuisance, *Holmes*, 507 So. 2d at 924. In each case, the Alabama Supreme Court held that the plaintiffs' claims were barred by exculpatory covenants contained in prior deeds within the plaintiffs' chains of title that released U.S. Steel from liability for damages caused by its mining operations. *Eastwood Lands*, 417 So. 2d at 168-69; *Holmes*, 507 So. 2d at 924-25. The *Eastwood Lands* court explicitly rejected the plaintiff's argument that such exculpatory covenants were against

public policy, 417 So. 2d at 169, and the *Holmes* court squarely held that such covenants may bar negligence, wantonness, trespass, and nuisance claims by using broad, general language, without explicitly referencing each particular cause of action barred by the exculpatory covenant, 507 So. 2d at 923-25.

The exculpatory covenant at issue in this case is materially indistinguishable from those in *Republic Steel*, *Eastwood Lands*, and *Holmes*. It is true that U.S. Steel's deed to Birmingham does not, like the deed in *Republic Steel*, contain explicit language stating that the purchase price of the land was reduced as consideration for the exculpatory covenant. But that is of no consequence for at least two reasons. First, a representative of U.S. Steel's real estate division has provided undisputed testimony that U.S. Steel bargained for the broad exculpatory language in the 1992 warranty deed and sold the 7.4-acre parcel to Birmingham at a below-market price, and the Prior Covenant Plaintiffs do not dispute these facts in their summary judgment briefing. (Doc. # 61 at 9, ¶¶ 4-5). Second, common sense dictates that anyone willing to sell a seven-acre parcel of land for a mere $100 is getting something in return for such a vastly below-market price. In this case, what U.S. Steel got in return for what was essentially a gift conveyance to the City of Birmingham was a broadly worded exculpatory covenant releasing it from all future liability to Birmingham's successors in title. It is thus beyond question that the exculpatory covenant contained in U.S. Steel's 1992 warranty deed to Birmingham is valid and enforceable.

### b) The Exculpatory Covenant Bargained for by U.S. Steel Unambiguously Covers the Prior Covenant Plaintiffs' Claims

Since the exculpatory covenant bargained for by U.S. Steel and agreed to by the Prior Covenant Plaintiffs' predecessor in title is plainly valid and enforceable, the only remaining question is whether the Prior Covenant Plaintiffs' claims are covered by the language of the covenant. The court concludes that they are.

The Prior Covenant Plaintiffs do not dispute the existence or contents of the exculpatory covenant contained in the 1992 warranty deed. They also do not dispute that the deed was properly recorded in the Jefferson County Probate Office and that they currently reside on the 7.4-acre parcel conveyed by U.S. Steel to Birmingham. The Prior Covenant Plaintiffs' only argument is that the language of the covenant does not bar the specific claims they assert against U.S. Steel in this lawsuit.

The language of the exculpatory covenant is broad. It provides that U.S. Steel shall not "at any time become liable" to Birmingham's successors in title for damages "resulting from the operations of the steel making facility . . . or any other operations under the control of" U.S. Steel. (Doc. # 61 at 14-15). It further states that "no right of action shall ever accrue to or be asserted by" Birmingham's successors in title for damages "resulting from said operations." (*Id.* at 15). But the Prior Covenant Plaintiffs nevertheless argue that the covenant only releases U.S. Steel from damages caused by *active* "operations" on the Ensley Works property, not from damages caused by *passive* neglect of the property. The court is unpersuaded. After the broad exculpatory language quoted above, the deed goes on to state, "Without in any way limiting the generality of the provisions of this paragraph the word 'damages' as herein used shall be held to include . . . damages resulting from *abandoned surface facilities* of [U.S. Steel]." (*Id.*) (emphasis added). Damages allegedly caused by U.S. Steel's abandoned surface facilities on the Ensley Works property are *precisely* what this lawsuit is about. All of the conditions about which the Prior Covenant Plaintiffs complain are the result of U.S. Steel's alleged decision to abandon the Ensley Works site and cease all maintenance of the surface facilities. And, as in *Republic Steel*, the Prior Covenant Plaintiffs' wantonness claims are based on U.S. Steel's decision to exercise a right explicitly granted to it in the exculpatory covenant—the right to abandon its surface

facilities without fear of litigation. The court thus concludes that "the unambiguous language in [U.S. Steel's 1992 warranty deed] effectively bars all [of the Prior Covenant Plaintiffs'] claims." *Holmes*, 507 So. 2d at 925. U.S. Steel's motion for summary judgment (Doc. # 62) is accordingly due to be granted.

### D. U.S. Steel's Motion to Strike Is Due to Be Denied as Moot

Among the materials Plaintiffs filed in opposition to U.S. Steel's summary judgment motion were the affidavits of Byron Bart Slawson (Doc. # 75-2 at 2-3) and Ronald Parker (Doc. # 77-5 at 2-4). U.S. Steel moved to strike both affidavits pursuant to Federal Rule of Evidence 702 on the basis that both offer opinions that are legal conclusions and thus inadmissible. (Doc. # 79). Because the court has not relied upon the alleged legal conclusions offered in the affidavits in evaluating U.S. Steel's motion for summary judgment, and because the court has in any event granted U.S. Steel's motion for summary judgment, U.S. Steel's motion to strike (Doc. # 79) is due to be denied as moot. *See Catanzaro v. Lyons*, 232 Fed. App'x 878, 881 (11th Cir. 2007); *United States* ex rel. *Wilson v. Crestwood Healthcare, L.P.*, No. CV-11-S-3361-NE, 2012 WL 1886351, at *11 (N.D. Ala. May 18, 2012).

## IV.    Conclusion

For the reasons explained above, the court concludes that Birmingham's motion to dismiss (Doc. # 67) is due to be granted and that U.S. Steel's motion to dismiss (Doc. # 64) is due to be granted in part. The court further concludes that U.S. Steel is entitled to summary judgment as to as to all claims asserted by Plaintiffs Leisa Mincy, Mary Norman, Henrietta Woods, Linda Bufford, Rosalind Clayton, Martha Smith, Anne Thomas, and Jessica Young. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this November 19, 2018.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE